UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| BENJAMIN STAHELIN, Individually and on Behalf of All Others Persons Similarly Situated )<br><br>Plaintiff, )<br><br>V. )<br><br>HYPERDYNAMICS CORPORATION, RAY NEONARD, PAUL C. REINBOLT, and DAVID WESSON, )<br><br>Defendants, ) | Civil Action No.:  4:14-cv-649<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Benjamin Stahelin ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Hyperdynamics Corporation ("Hyperdynamics" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased Hyperdynamics securities between November 8, 2012 and March 11, 2014, inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company and certain of its top officials.

2.      Hyperdynamics' operations include two wholly subsidiaries, SCS Corporation and HYD Resources, which are focused on oil and gas exploration.

3.      On September 30, 2013, the Company disclosed "that in September 2013 it received a subpoena from the United States Department of Justice (DOJ) requesting that the Company produce documents relating to its business in Guinea" for potentially violating the U.S. Foreign Corrupt Practices Act or U.S. anti-money laundering statutes. The focus of the investigation is "whether Hyperdynamics' activities in obtaining and retaining [its] concession rights and its relationships with charitable organizations violate the U.S. Foreign Corrupt Practices Act or U.S. anti-money laundering statutes."

4.      On this news, Hyperdynamics securities declined $0.66 per share, or nearly 15%, to close at $3.76 per share on October 1, 2013.

5.      On March 12, 2014, the Company announced in a press release, that its partner in Guinea, Tullow Oil Plc, halted activities in Guinea due to the U.S. Department of Justice and U.S. Securities and Exchange Commission probes into Hyperdynamics' alleged fraud and corruption in obtaining drilling licenses in Guinea. Tullow Oil asserted that these investigations

constituted a Force Majeure event under its agreements with its partners, including Hyperdynamics, relating to exploration rights in offshore Guinea.

6. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company obtained and retained oil and gas concession rights in violation of the U.S. Foreign Corrupt Practices Act and/or U.S. anti-money laundering statutes; (2) the Company lacked adequate internal and financial controls; and (3) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

10. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b), as the securities of Hyperdynamics were publicly traded in this District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached certification, purchased Hyperdynamics securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Hyperdynamics is a Delaware corporation with its headquarters located at Hyperdynamics Park, 12012 Wickchester Lane, Suite 475, Houston, TX 77079. The common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "HDY."

14.     Defendant Ray Leonard ("Leonard") has served, at all relevant times, as the Company's President and Chief Executive Officer.

15.     Defendant Paul C. Reinbolt ("Reinbolt") has served, at all relevant times until December 31, 2013, as the Company's Chief Financial Officer and Executive Vice President.

16.     Defendant David Wesson ("Wesson") became the Company's Chief Financial Officer effective January 1, 2014.

17.     The defendants referenced above in ¶¶ 13 - 16 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

18.     Hyperdynamics is an independent oil and gas exploration company with large prospects in offshore Republic of Guinea in Northwest Africa pursuant to rights granted to the

Company by the government of Guinea (the "Concession") under a Hydrocarbon Production Sharing Contract, as amended on September 22, 2006 ("PSC"), through its wholly owned subsidiary, SCS Corporation Ltd. Under the agreement, the Company was granted certain exclusive contractual rights by Guinea to explore and exploit offshore oil and gas reserves, if any, off the coast of Guinea. The Company's primary focus is the advancement of exploration work in Guinea. The Company also plans to continue to evaluate and consider other global oil and gas opportunities.

19. On November 8, 2012, the Company filed a quarterly report for the period ended September 30, 2012 on a Form 10-Q with the SEC signed by Defendants Leonard, Reinbolt and Wesson, and reported a net loss of $6,190,000, or $0.04 diluted loss per share ("LPS"), as compared to a net loss of $4,376,000, or $0.03 diluted LPS for the same period a year ago. In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Leonard and Reinbolt stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

20. The Form 10-Q represented the following in relevant part concerning investment in oil and gas properties: Investment in oil and gas properties consists entirely of our Guinea Concession in offshore West Africa. We own a 77% participating interest in our Guinea Concession.

21. On February 6, 2013, the Company filed a quarterly report for the period ended December 31, 2012 on a Form 10-Q with the SEC signed by Defendants Leonard, Reinbolt and Wesson, and reported a net loss of $5,064,000, or $0.03 diluted LPS, as compared to a net loss of $6,323,000, or $0.04 diluted LPS for the same period a year ago. In addition, the Form 10-Q

contained signed certifications pursuant to SOX by Defendants Leonard and Reinbolt stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

22. The Form 10-Q represented the following in relevant part concerning the Company's investment in oil and gas properties:

> Investment in oil and gas properties consists entirely of our Guinea Concession in offshore West Africa. We owned a 77% participating interest in our Guinea Concession prior to the sale of a 40% gross interest to Tullow which closed on December 31, 2012. We now own a 37% interest in the Concession.

23. On May 8, 2013, the Company filed a quarterly report for the period ended March 31, 2013 on a Form 10-Q with the SEC signed by Defendants Leonard, Reinbolt and Wesson, and reported a net loss of $2,798,000, or $0.02 diluted LPS, as compared to a net loss of $127,198,000, or $0.78 diluted LPS for the same period a year ago. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Leonard and Reinbolt, stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

24. The Form 10-Q represented the following in relevant part concerning the Company's investment in oil and gas properties:

> Investment in oil and gas properties consists entirely of our Guinea Concession in offshore West Africa. We owned a 77% participating interest in our Guinea Concession prior to the sale of a 40% gross interest to Tullow which closed on December 31, 2012. We now own a 37% interest in the Concession.

25. On September 11, 2013, the Company filed an annual report for the year ended June 30, 2013 on a Form 10-K with the SEC signed by Defendants Leonard, Reinbolt and Wesson, and reported a net loss of $18,461,000, or $0.88 diluted LPS, as compared to a net loss of $149,313,000, or $7.44 diluted LPS for the same period a year ago. For the fourth quarter, the

Company reported a net loss of $4,409,000, or $0.21 diluted LPS, as compared to a net a loss of $11,416,000, or $0.55 diluted LPS for the same period a year ago. In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Leonard and Reinbolt, stating that the financial information contained in the Form 10-K was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

26. The Form 10-K represented the following in relevant part:

On March 25, 2010, we entered into Amendment No. 1 to the PSC with Guinea (the "PSC Amendment"). In May 2010, the government of Guinea issued a Presidential Decree approving the PSC, as amended by the PSC Amendment. The PSC Amendment clarified that we retained a Contract Area of approximately 25,000 square kilometers, which is approximately equivalent to 9,650 square miles or 30% of the original Contract Area under the PSC. The PSC Amendment requires that an additional 25% of the retained Contract Area be relinquished by September 21, 2013. Under the terms of the PSC Amendment, the first exploration period ended and the second exploration period began on September 21, 2010. The second exploration period runs until September 2013, may be renewed to September 2016 and may be extended for one additional year to allow the completion of a well in process and for two additional years to allow the completion of the appraisal of any discovery made. The Consortium sent a notice to the Government of Guinea to renew the second exploration period to September 2016. The notice included the coordinates of the area to be relinquished.

The PSC Amendment required the drilling of an exploration well, which had to be commenced by year-end 2011, and drilled to a minimum depth of 2,500 meters below seabed. This requirement was satisfied with the drilling of the Sabu-1 well which was commenced during October of 2011 and reached the minimum depth of 2,500 meters below the seabed in February of 2012. It also required the acquisition of at least 2,000 square kilometers of 3D seismic data which was satisfied by the 3,600 square kilometer seismic acquisition in 2010-2011. To satisfy the September 2013-2016 work requirement, the Consortium is required to commence drilling of an additional exploration well by the end of September 2016, to a minimum depth of 2,500 meters below seabed. The PSC Amendment requires the expenditure of $15 million on each of the exploration wells ($30 million in the aggregate). Greater than $15 million was spent on the first exploration well, and it is expected the cost of the next exploration well will be significantly greater than $15 million.

***

In July of 2013, a proposal was submitted for a Second Amendment to the PSC (the "Second PSC Amendment") to the Government of Guinea formally adding Tullow as a Contractor to the PSC as well as addressing other administrative issues.

***

Investment in oil and gas properties consists entirely of our Guinea Concession in offshore West Africa. We owned a 77% participating interest in our Guinea Concession prior to the sale of a 40% gross interest to Tullow which closed on December 31, 2012. We now own a 37% interest in the Concession.

## THE TRUTH BEGINS TO EMERGE

27. On September 30, 2013, the Company "announced that in September 2013 it received a subpoena from the United States Department of Justice (DOJ) requesting that the Company produce documents relating to its business in Guinea." The Company further disclosed the following in relevant part:

> In 2006, a Production Sharing Contract was signed by the Company and the government of Guinea granting rights to an oil and gas concession offshore Guinea. The Company understands that the DOJ is investigating whether Hyperdynamics' activities in obtaining and retaining the concession rights and its relationships with charitable organizations potentially violate the U.S. Foreign Corrupt Practices Act or U.S. anti-money laundering statutes. The Company has retained legal counsel to represent it in this matter and is cooperating fully with the government. The Company is unable to predict when the investigation will be completed, what outcome may result and what costs the Company will incur in the course of the investigation.

28. On this news, Hyperdynamics securities declined $0.66 per share, or nearly 15%, to close at $3.76 per share on October 1, 2013.

29. On November 12, 2013, the Company filed a quarterly report for the period ended September 30, 2013, on a Form 10-Q with the SEC signed by Defendants Leonard, Reinbolt and Wesson, and reported a net loss of $4,454,000, or $0.21 diluted LPS, as compared to a net loss of $6,190,000, or $0.30 diluted LPS for the same period a year ago. In addition, the Form 10-Q

contained signed certifications pursuant to SOX by Defendants Leonard and Reinbolt, stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

30. The Form 10-Q represented the following in relevant part concerning the Company's investment in oil and gas properties:

> Investment in oil and gas properties consists entirely of our Guinea Concession in offshore West Africa. We owned a 77% participating interest in our Guinea Concession prior to the sale of a 40% gross interest to Tullow which closed on December 31, 2012. We now own a 37% interest in the Concession.

31. On December 10, 2013, the Company filed a form 8-K with the SEC which stated that On December 5, 2013, effective January 1, 2014, the Company appointed David Wesson as Chief Financial Officer. The Company had previously announced that Paul Reinbolt, their current Chief Financial Officer, would leave on December 31, 2013.

32. On February 7, 2014, the Company filed a quarterly report for the period ended December 31, 2013, on a Form 10-Q with the SEC, signed by Defendants Leonard and Wesson, and reported a net loss of $8,353,000, or $0.40 diluted LPS, as compared to a net loss of $5,064,000, or $0.24 diluted LPS for the same period a year ago. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Leonard and Wesson stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

33. The Form 10-Q represented the following in relevant part concerning investment in oil and gas properties:

> Investment in oil and gas properties consists entirely of our Guinea Concession in offshore West Africa. We owned a 77% participating interest in our Guinea Concession prior to the sale of a 40% gross interest to Tullow which closed on December 31, 2012. We now own a 37% interest in the Concession.

***

> During September 2013, we received a subpoena from the United States Department of Justice. Subsequently, in January 2014 we received a subpoena from the United States Securities and Exchange Commission. Both subpoenas request that the Company produce documents relating to its business in Guinea. We understand that the DOJ and SEC are investigating whether our activities in obtaining and retaining the Concession rights and our relationships with charitable organizations potentially violate the U.S. Foreign Corrupt Practices Act or U.S. anti-money laundering statutes. We have retained legal counsel to represent us in these matters, initiated an internal investigation, and we are cooperating fully with the government.

***

> We incurred approximately $3.0 million in legal and other professional fees associated with the FCPA investigations in the six month period ended December 31, 2013, and it is likely that we will continue to incur significant expenses in the next several months.

***

> Due to expected significant costs in connection with our various legal proceedings and the FCPA investigations, our liquidity and financial condition will be strained. Liquidity concerns will be exacerbated if costs associated with the drilling of the exploration well planned for 2014 are greater than $100 million. In addition, these costs and any negative outcomes could also adversely affect our ability to obtain financing, or to obtain financing on terms advantageous to us.

34. The statements referenced in ¶¶ 18 – 26, and ¶¶ 29 –33, were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (1) the Company obtained and retained oil and gas concession rights and established relationships with charitable organizations in Guinea in violation of the U.S. Foreign Corrupt Practices Act and/or U.S. anti-money laundering statutes; (2) the Company lacked adequate internal and financial controls; and (3) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

35. On March 12, 2014, the Company announced in a press release, that its partner, Tullow Oil Plc, halted activities in Guinea based on probes by the U.S. Department of Justice and U.S. Securities and Exchange Commission, into Hyperdynamics' alleged fraud and corruption in obtaining drilling licenses in Guinea. Tullow Oil asserted that these investigations constituted a Force Majeure event under the Concession and PSC agreements, relating to the exploration rights in offshore Guinea.

36. On this news, Hyperdynamics securities declined $3.07 per share or over 58%, to close at $2.19 per share on March 12, 2014.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Hyperdynamics securities during the Class Period (the "Class"); and were damaged thereby. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

38. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Hyperdynamics securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Hyperdynamics or its transfer agent and may be

notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

40. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether the statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Hyperdynamics;

- whether the Individual Defendants caused Hyperdynamics to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Hyperdynamics securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as

the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Hyperdynamics securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Hyperdynamics securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

44. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

45.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

46.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Hyperdynamics securities; and (iii) cause Plaintiff and other members of the Class to purchase Hyperdynamics securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

48.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were

designed to influence the market for Hyperdynamics securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Hyperdynamics's finances and business prospects.

49. By virtue of their positions at Hyperdynamics, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Hyperdynamics, the Individual Defendants had knowledge of the details of Hyperdynamics internal affairs.

51. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Hyperdynamics. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Hyperdynamics's businesses, operations, future financial condition and future prospects. As a

result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Hyperdynamics securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Hyperdynamics's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased Hyperdynamics securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

52. During the Class Period, Hyperdynamics securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Hyperdynamics securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of Hyperdynamics securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Hyperdynamics securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases

and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

55. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. During the Class Period, the Individual Defendants participated in the operation and management of Hyperdynamics, and conducted and participated, directly and indirectly, in the conduct of Hyperdynamics' business affairs. Because of their senior positions, they knew the adverse non-public information about Hyperdynamics's violations of federal law.

57. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Hyperdynamics' business practices, and to correct promptly any public statements issued by Hyperdynamics which had become materially false or misleading.

58. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Hyperdynamics disseminated in the marketplace during the Class Period concerning Hyperdynamics' operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Hyperdynamics to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Hyperdynamics within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Hyperdynamics securities.

59. Each of the Individual Defendants, therefore, acted as a controlling person of Hyperdynamics. By reason of their senior management positions and/or being directors of Hyperdynamics, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Hyperdynamics to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Hyperdynamics and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

60. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Hyperdynamics.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 14, 2014                                 **PAYNE MITCHELL LAW GROUP, LLP**

*/s/ R. Dean Gresham*
R. Dean Gresham, Esq.
Texas Bar No. 24027215
S.D. of Texas Bar No. 27438
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Tel: (214) 252-1888
Fax: (214) 252-1889
Email: dean@paynemithcell.com

-And-

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (not admitted)
Laurence M. Rosen, Esq. (not admitted)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

COUNSEL FOR PLAINTIFF